Filed 4/16/15  In re V.V. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re V.V., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E061985 |
| Plaintiff and Respondent, | (Super.Ct.No. SWJ1300364) |
| v. | OPINION |
| N.V., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John M. Monterosso, Judge.  Affirmed.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and Julie Koons Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant N.V. (mother) is the biological mother of V.V., the child who is the subject of this dependency proceeding. She appeals from the juvenile court's orders denying her petition pursuant to Welfare and Institutions Code[1] section 388, and terminating her parental rights with respect to the child pursuant to section 366.26. She contends the court should have granted her further reunification services and authorized liberalized visitation, instead of terminating her parental rights and establishing a permanent plan of adoption for the child. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On June 4, 2013, the Riverside County Department of Public Social Services (DPSS) filed a dependency petition with respect to the newborn girl V.V. Mother had received no prenatal care, the child was born at 35 weeks' gestation, and both mother and child tested positive for amphetamines. The father of the child was unknown; mother declined to identify him to the social worker. Mother reported to the social worker that she was currently "staying at a friend's house because she lost her home." Mother had one other child, a daughter who was staying with a maternal cousin. Mother indicated that she was unemployed, and planned to get money from unemployment and relatives to support her and the child.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] We here summarize only those facts necessary for context, and those directly relevant to mother's claims of error. An exhaustive factual and procedural history is unnecessary to the disposition of the matter.

On June 5, 2013, the juvenile court detained the child, and on August 8, 2013, it sustained the petition, finding that she came within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). Despite the recommendation from DPSS that mother be denied reunification services, the court ordered services to be provided, finding that to do so would be in the best interest of the child.

On October 8, 2013, the child was placed with her maternal aunt. The aunt had begun visiting the child in July 2013, prior to placement. DPSS reported to the court in January 2014 that the child was doing well in the aunt's home, and was "truly attached to her caretaker and the rest of the family," which also included three older cousins who "surrounded [her] with love."

In the meantime, mother failed to participate in the reunification services offered to her. In January 2014, DPSS reported that mother had been referred to individual therapy, parent education, and substance abuse treatment, but had not followed up on any of those referrals. She was referred to drug testing, but failed to show up. The court had ordered visitation to occur twice a week; mother had not visited with the child even a single time.

In an addendum report filed February 26, 2014, DPSS reported that mother had called the social worker on February 10, 2014, interested in obtaining new referrals and visiting with the child. On February 20, 2014, after mother had a clean drug test, a visit between mother and child was arranged. Mother interacted well with the child during the visit, but the social worker observed that there was no bond between mother and daughter, because of the lack of previous visitation.

3

On March 6, 2014, the court terminated mother's reunification services, and set a section 366.26 hearing. Mother's visitation was reduced to one supervised visit per month, with additional visitation authorized.

On March 12, 2014, mother filed a notice of intent to file writ petition. The petition was dismissed, however, pursuant to a withdrawal filed on March 24, 2014.

On May 12, 2014, mother filed a section 388 petition, requesting that the court reinstate reunification services and authorize liberalized visitation. The changed circumstances cited as the basis of the petition are a clean hair follicle drug test on March 5, 2014, mother's subsequent entry into and completion of a 45-day inpatient drug treatment program, and the circumstance that she had "established a stable residence . . . ." Mother also had begun visiting with the child as permitted by the court's orders, and she believed that they had "established a nurturing and loving bond." The court set the matter for a hearing.

In a section 366.26 report filed June 5, 2014, and again in an addendum report filed June 23, 2014, DPSS recommended that the parental rights of mother and the unknown father or fathers of the child be terminated, and that the child remain in the care of the maternal aunt, who was now a prospective adoptive parent. DPSS acknowledged that mother's visits with the child had gone well; she had visited with the child twice a week from February 20, 2014, until March 6, 2014, and monthly thereafter until June 12, 2014, when visitation was increased to twice monthly, in accordance with the court's orders. Mother's older daughter, as well as the older daughter's caretaker, a maternal cousin, also participated in the visits in a positive manner.

4

Nevertheless, the social worker observed that the child had "no bond" to mother, despite mother's recent efforts to build one, and credited the circumstance that visits with mother had gone well to the child "being a happy and stable baby while being cared for by [mother's] sister." The lack of any visitation by mother in the first eight months of the child's life, followed by the limited visitation allowed by the court thereafter, left simply "not enough time to truly establish a bond with a child that is nearing one year old." In contrast, the child was "very attached and bonded" to her current caretaker and prospective adoptive parent, her maternal aunt, who had provided "the only home that [the child] knows[,] a home that has provided for all of her needs since she was four months old . . . ." Further, though mother now had a stable residence, she was still without a job—her only source of income was food stamps—and she was being supported by other family members. DPSS also noted that the maternal aunt had expressed willingness to continue visitations between the child and her older sibling.

Mother's section 388 petition was heard on September 15, 2014. Mother's testimony was presented, pursuant to stipulation, in the form of a letter to the court, dated June 19, 2014. Among other things, the letter states that mother had been homeless until February 2014, but since then had been sober and living in a stable residence, with the assistance of her cousin (the older daughter's caretaker). Mother had completed an inpatient rehabilitation program, and continued attending outpatient counseling weekly, as well as church twice weekly. She had attended every scheduled visit with the child since February 2014, and expressed hope that she would be able to reunite permanently with both her daughters in the future.

5

The court found mother had established changed circumstances, given her "remarkable turnaround," but decided the requested change of order would not be in the child's best interest, and denied mother's section 388 petition on that basis. The court then proceeded to section 366.26 matters, terminating parental rights and setting adoption as the child's permanent plan.

## II. DISCUSSION

### A. Standard of Review

"Under section 388, a person with an interest in a dependent child may petition the court to change, modify, or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that there is a change of circumstances or new evidence, *and* the proposed modification is in the child's best interest. [Citations.]" (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. [Citation.]" (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) Importantly, given the circumstances of this case, "[a]fter the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point, 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interest of the child. [Citation.] A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before

6

it, that is, the best interest of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317. (*Stephanie M.*).)

"The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established. [Citation.]" (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) "'"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citation.]" (*Stephanie M.*, *supra*, 7 Cal.4th at pp. 318-319.)

**B. Analysis**

This appeal turns on whether mother has shown that the juvenile court abused its discretion by determining the best interest of the child would not be served by granting mother's requested modification of its prior orders.[3] Because the trial court's decision did not exceed the bounds of reason, we find no abuse of discretion.

As noted, mother's burden on the second prong of the section 388 analysis was to show that the child's best interests, and in particular the need of the child for permanency and stability, would be served by the requested change. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) Her petition in essence presented the court with two basic options: (1) deny any further reunification services and terminate mother's parental rights, freeing the child

---

[3] The trial court found, and DPS has not contested on appeal, that mother showed a genuine change of circumstances. We therefore need not discuss that portion of the section 388 analysis further.

7

for likely adoption by the only parent she had ever known, with whom she had developed a strong mutual attachment, and who was prepared to provide her a permanent, stable and loving home; or (2) delay adoption in favor of further reunification services for mother who (a) only recently had obtained stable housing for herself, (b) who continued to have no independent means of supporting herself or any of her children, (c) whose sobriety, while commendable, remained a relatively new phenomenon, and (d) to whom the child could not yet have developed a bond going beyond that of a friendly visitor, because of mother's complete absence from the first part of her life, and only occasional visits thereafter. To say the least, the trial court's conclusion that the first option would better serve the child's need for permanency and stability did not exceed the bounds of reason.

Mother emphasizes on appeal the factors listed in *In re Kimberly F.* (1997) 56 Cal.App.4th 519 (*Kimberly F.*), which include "(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of the relative bonds between the dependent children to *both* parent and caretakers; and (3) the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been." (*Id.* at p. 532.) These factors, however, do not account for the need of the child for permanency and stability emphasized in *Stephanie M.*, *supra*, 7 Cal.4th at p. 317. (See *In re J.C.* (2014) 226 Cal.App.4th 503, 527 [declining to apply *Kimberly F.* factors on this basis].) Even accepting mother's application of the *Kimberly F.* factors—and there is room for argument with respect to her analysis—she fails to show that the trial court abused its discretion in determining the child's best interests. She points to nothing in the record,

8

and upon review we discern nothing in the record, compelling the conclusion that the child's need for permanency and stability would be furthered by her proposed modification.

Mother is to be commended for her efforts to improve her life. We express our hope that by continuing to do so, she will eventually be able to have a healthy relationship of some sort—even if not a parental relationship—with the child, given that the prospective adoptive parent is the child's maternal aunt. Nevertheless, the trial court did not abuse its discretion when it concluded mother had not shown *the child's* best interests would be served by further delaying permanency and stability in favor of rewarding *mother* for her recent hard work and efforts to reunify.

### III.  DISPOSITION

The orders appealed from are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

KING
J.

MILLER
J.

9