Filed 9/5/13  In re M.S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.S. et al., Persons Coming Under the Juvenile Court Law. | D063628 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14109A-B) |
| v. | |
| LINDA S., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Blaine K. Bowman, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Linda S. appeals from a January 2013 postpermanency review hearing. She contends that the juvenile court erred in not ordering six months of reunification services for her under Welfare and Institutions Code section 366.3 because additional reunification services with her youngest daughter, S.S., was the best alternative for S.S. (Undesignated statutory references are to the Welfare and Institutions Code.) We disagree. Although the juvenile court also made findings as to Linda's older daughter, M.S., Linda does not raise any issues on appeal with respect to M.S.

FACTUAL AND PROCEDURAL BACKGROUND

In 2009, M.S. (currently age 16) and S.S. (currently age 14) were removed from Linda's care due to Linda's mental illness, suicide attempt and her mental health hospitalization. At that time, a psychologist described M.S. as a "very bright youngster" suffering from mild depression and anxiety. S.S. had previously been diagnosed with mild cerebral palsy, mental retardation, anxiety disorder, obsessive compulsive disorder and mood disorder.

Linda underwent two psychological evaluations. One psychologist stated that Linda "demonstrat[ed] multiple psychological problems that significantly impair[ed] her ability to effectively and adaptively parent [M.S. and S.S.]. The fact that these children have special needs serves to further exacerbate the concerns over her psychological and emotional status." This psychologist concluded that Linda was not capable of benefitting from services "as these services [had] already been provided on multiple prior occasions with no positive impact."

2

A second psychologist similarly noted that Linda's "history is replete with treatment episodes whereby she has a positive change in the short term, such as her hospitalizations where she ha[d] been taken care of and medication ha[d] strictly been adhered to, but such gains were not maintained due[ to] her treatment noncompliance. There is no indication that this pattern will change, that is, [Linda] is unlikely to benefit from treatment. Medication has shown to have a positive impact on her moods and ideations, however, she highly likely . . . will continue to be noncompliant with any psychotropic mediation." This psychologist concluded that if Linda "can limit herself to nondemanding activities in familiar surroundings, she can get by, though with a restricted life. However, she is at risk in the face of ordinary stress and can have limited frustration tolerance and poor impulse control."

In September 2009, the juvenile court declared the girls dependents of the juvenile court and removed them from Linda's care. It denied Linda reunification services, but ordered ongoing individual therapy for her. In December 2009, S.S. was placed in a specialized foster home where she remains. In March 2010, M.S. was placed at San Pasqual Academy where she remains. Since March 2010, the girls have been in another planned permanent living arrangement (APPLA).

In January 2011, after holding an evidentiary hearing on section 388 petitions filed by the San Diego County Health and Human Services Agency (Agency), the juvenile court affirmed Linda's visitation with M.S. in a therapeutic setting and authorized phone calls. For S.S., the court gave the social worker discretion to reactivate supervised visitation with Linda and permitted supervised phone contact. In June 2011, the court

3

continued the girls in out-of-home care and gave the Agency discretion to allow Linda's visits with the girls to take place outside the therapeutic setting. In December 2011, M.S. decided to no longer have contact with Linda.

Linda represented herself at the January 2013 postpermanency review hearing. She requested that the girls be returned to her care or placed with her adult daughter, Amber S. The court heard testimony from a number of witnesses, including Linda's former employer and former therapist, Dr. Alan Lincoln. After considering the evidence, the juvenile court concluded that further efforts at reunification were not the best alternative for M.S. and denied Linda's request for her return or placement with Amber. At the hearing, the juvenile court noted it could order six months of reunification services and possibly six months of family maintenance services. It stated:

> "And I know this is a case where there were no services that were ever offered. I am not in a position to second-guess that finding … but I would imagine that there had to be a finding that she could not benefit from services.

> "And I do think that [Linda] has shown the ability to benefit from services, and I have considered ordering additional psychological evaluations to gain some insight. And then we all -- and my attention just constantly gets turned back to what happened in December, because it -- from the testimony I heard that [Linda] has made improvements, through Dr. Lincoln she has made improvements, and everybody has agreed that she has improved, but then we look at what happened on December 12th, where, you know, it is reported that she was improperly -- it was improperly suggested, let's just say, that she was going to be going home to her mother, and then [S.S.] goes home and starts packing. The foster mom asks her what she's doing, and she thinks she is going to be going home, and that has devastating effects to [S.S.], especially given her developmental delays. [¶] . . . [¶]

4

"And it just shows that [Linda] has not made as much progress as I would hope. And that is kind of the extra weight that pushes us back into not offering reunification services.

"I don't feel at this point with respect to the return that it is in the best interest[s] of [S.S.] to return to [Linda]. She has been in her current foster home since December 16th of 2009. She appears to be doing very well there. She's very well-adjusted, and at this point, to take her from that setting into what is kind of an unknown setting with [Linda] is not the best alternative for her; and the Court finds that [Linda] has not proven by a preponderance of the evidence that further reunification interests are the best alternative for the child at this time.

"As I indicated, I strongly considered it. I strongly considered offering reunification services for [S.S.], based on [S.S.]'s desires, the strong love that exists between [S.S.] and [Linda], but I look at the law, and I have to follow the law, and I have given it a great deal of thought. And the mother just has not met the burden.

"So the request to return [S.S.] to [Linda] is denied. [¶] "Although the request wasn't made for reunification services under [section] 366.3[, subdivision] (f), . . . I have considered that possibility, and it is denied."

After considering some final statements by Linda where she essentially expressed her frustration with the dependency system, the juvenile court stated:

"As I said, it was a close call for me, which I said probably is surprising news for county counsel here. All right?

"I would encourage you not to give up. I would encourage you to continue your improvement, and these same issues could be before the Court in six months, and I want you just to focus on your visits with your kids and make them as positive as possible."

The juvenile court found APPLA the appropriate plan for the girls and set the next postpermanency review hearing for July 2013. Linda timely appealed.

5

DISCUSSION

Linda contends the juvenile court abused its discretion when it denied her reunification services in S.S.'s case because she met her burden of showing significant improvement and changes in herself mitigating the initial reason for removal and that the granting of reunification services was in S.S.'s best interests. As a preliminary matter, the Agency asserts Linda did not raise the issue of reunification services below and violates the theory of trial doctrine by seeking review of this issue.

Here, the Agency is correct that Linda, representing herself, did not argue for additional reunification services even though the juvenile court has the discretion to order a further period of reunification services at a status review hearing. (§ 366.3, subd. (f).) The Agency, however, addressed this issue and argued that Linda had not met her burden to qualify for reunification services. The juvenile court considered the issue and expressly ruled on it. On this record, we conclude that Linda has not waived her right to appeal any of the section 366.3 issues, including the opportunity to prove that reunification services was the best alternative for S.S.

Turning to the merits, at a status review hearing, the juvenile court is required to consider all permanency planning options, including whether the child should be returned to the home of the parent, placed for adoption, appointed a legal guardian or placed in APPLA. (§ 366.3, subd. (h).) It is presumed that continued care is in the child's best interests, unless the parent proves, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child. (§ 366.3, subd. (f).) If the parent proves that reunification is the best alternative for the child, "the court may order that

6

further reunification services to return the child to a safe home environment be provided to the parent or parents up to a period of six months, and family maintenance services, as needed for an additional six months in order to return the child to a safe home environment." (*Ibid.*) "[T]he burden and standard of proof . . . is the same as under section 388." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 226.) Accordingly, the juvenile court's ruling will not be disturbed absent a clear abuse of discretion. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415-416.) We " 'interfere only " 'if we find that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he [or she] did.' " ' " (*Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 863.)

Here, the juvenile court commended Linda on her efforts in seeking services on her own, noting "great change" in Linda since the beginning of the dependency in 2009. After reviewing the record, we concur. The evidence is overwhelming, that despite two psychological evaluations in 2009 finding that Linda would *not* benefit from services, she sought services on her own and has shown marked improvement. We agree that Linda must be commended for the tremendous strides she has made in improving herself. Linda's improvement, however, is only part of the equation. She must also show that further efforts at reunification are the best alternative for S.S. The juvenile court found evidence on this lacking.

The goal for further reunification services is to eventually return the child to a safe home environment. (§ 366.3, subd. (f).) Currently, S.S. is doing well in her foster placement, is very close to the family and participates in family activities. The foster

7

mother reported, however, that S.S. can be noncompliant at times. She requires prompting to complete hygiene tasks, periodically soils herself or her bedding, is slow to respond to prompts and sometimes completely ignores directions. While Amber testified regarding Linda's good care of her as a child, the record does not show that Amber suffers from any developmental delays such as those impacting S.S. The evaluating psychologists in 2009 both expressed concern regarding Linda's ability to cope with S.S.'s special needs.

Our review of the reporter's transcript of the hearing reveals that, in general, Linda handled this stressful situation very well. Linda's composure, however, began to wane while questioning M.S., including muttering under her breath that M.S. had been brainwashed and accusing M.S. of lying. Significantly, one of Linda's goals in therapy was to improve her ability to regulate her behavior when stressed. Another goal was for Linda to see a psychiatrist to reestablish her prescription for appropriate psychotropic medication. Dr. Lincoln referred Linda back to psychiatry but she never went. Instead, she met with a nurse practitioner and decided not to take any medication. This testimony is troubling based on the evidence in the record that Linda has a history of being noncompliant with psychotropic mediation even though this medication has shown to have a positive impact on her moods and ideations. Based on the totality of the evidence, the juvenile court could have reasonably found that the granting of reunification services to Linda was unlikely to make return of S.S. more likely.

Linda concentrates on the juvenile court's comment about S.S.'s packing her bags after a visit with Linda to show the court abused its discretion in not ordering

reunification services. She points out that S.S. has exhibited a pattern of packing her bags in relation to different social cues. We do not agree that the court's comment shows an abuse of discretion. The juvenile court's statements, read in context, suggest it used this incident as an example that further reunification efforts were not the best alternative for S.S. Significantly, the record contains little information regarding Linda's current circumstances. For example, although Linda testified that she lives on her own and pays rent, nothing is known about her current living and employment situation. Linda stopped working for her former employer about 18 months ago and works for the former employer occasionally when the former employer needs extra help. As the juvenile court correctly noted, "children want to have stability and want to have some permanence."

Even if we might have reached a different result, where two or more inferences reasonably can be deduced from the facts, we have no authority to reweigh the evidence or substitute our judgment for that of the juvenile court. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) On this record, Linda has not shown that the juvenile court abused its discretion when it denied Linda reunification services.

## DISPOSITION

The order is affirmed.

McINTYRE, J.

WE CONCUR:

McDONALD, Acting P. J.

O'ROURKE, J.

9