Filed 4/22/14  In re Raquel S. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re RAQUEL S., a Person Coming Under the Juvenile Court Law. | |
| | D064808 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518503) |
| v. | |
| ALFONSO S., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Cynthia Bashant, Judge.  Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

Alfonso S. appeals orders terminating his parental rights to his daughter, Raquel S., and denying his Welfare and Institutions Code section 388 petition.[1] He contends the juvenile court prejudicially erred by finding it would be detrimental to place Raquel with him, by denying his section 388 petition without a hearing, and by finding the beneficial parent child relationship exception to termination of parental rights and adoption does not apply in this case. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

On September 5, 2012, the San Diego County Health and Human Services Agency (the Agency) petitioned under section 300, subdivisions (b) and (g) on behalf of 11-month-old Raquel, alleging she was at substantial risk because her mother, Jennifer G., used alcoholic beverages to excess. The petition also alleged Jennifer was incarcerated and could not arrange for Raquel's care, and efforts to locate Alfonso were not successful.[2]

Jennifer identified Alfonso as Raquel's father and said he had been deported to Mexico. She provided his birth date and said she did not know his address or telephone number. She said Raquel had not lived in Alfonso's home, but she had taken Raquel to Tijuana to see him on about 10 occasions and left her with him for a day or two at a time. She said Alfonso sometimes bought supplies for Raquel. Jennifer said Alfonso loved Raquel and took good care of her when they visited. The court ordered Raquel detained; the Agency began a search for Alfonso.

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     The allegation under section 300, subdivision (g) was later dismissed.

At the jurisdictional and dispositional hearing, the court found the allegations of the petition to be true, declared Raquel a dependent child, removed her from Jennifer's custody, ordered reunification services for Jennifer and search efforts for Alfonso, and ordered Raquel placed in out-of-home care.

Alfonso's brother, Francisco S., was identified as Alfonso's emergency contact in San Diego, California. However, the social worker was unable to leave a message when she telephoned Francisco's home. The Agency sent notice of the proceedings to Alfonso at Francisco's address, and in turn received two certified return mail receipts signed by Francisco. Francisco said he had given the notice to Alfonso in February 2013, but he did not know Alfonso's address or telephone number in Tijuana. In March, Alfonso called the social worker and left two voice mail messages, but he did not give any contact information. Francisco's wife said Francisco would ask Alfonso to call the Agency and provide a telephone number.

Jennifer began services, but then stopped participating and visiting Raquel. Meanwhile, Raquel adjusted well to her foster home.

At the contested six-month review hearing on April 5, 2013, the court terminated Jennifer's services, finding she had been offered reasonable services, but had made no progress and had not had contact with Raquel for six months. It found Alfonso had received actual notice of Raquel's dependency, but had avoided contact with the Agency and had not asked to be named the presumed father or requested services. It terminated the Agency's obligation, if any, to provide services for him.

3

The social worker continued to try to reach Alfonso. They finally spoke by telephone on May 14, 2013. Alfonso said he wanted to establish paternity and wanted Raquel to be placed with Francisco or with a paternal aunt.

The social worker assessed Raquel as adoptable and reported her foster parents were committed to adopting her. Alfonso told the social worker he would be available by telephone for a special hearing set for July 25, 2013. On that date, the court appointed counsel for him, but the appointed counsel said she had not been able to reach him at the number provided. The court ordered a continuance to allow search efforts for both parents. On July 31, the court found Alfonso had been provided notice of the section 366.26 hearing set for September 30.

On a parentage inquiry form, Alfonso said Raquel had lived with him until she was seven months old, and he had provided food, shelter and supplies. He said when Jennifer left Mexico, he wanted her to leave Raquel with him, and when he learned Raquel had become a dependent child, he did not know what to do. The court found Alfonso was Raquel's presumed father under Family Code section 7611, subdivision (d).

The social worker reported Alfonso had been convicted of burglary in 1994 and his criminal history included arrests for possessing a controlled substance and drug paraphernalia, battery on a spouse and driving under the influence. His child protective services history included a substantiated referral for domestic violence with his former wife. He did not participate in the services offered to him at that time.

In September 2013, Alfonso requested visitation. At the first supervised visit at the Mexican Consulate, Raquel cried and appeared to be in distress, but she later seemed more comfortable. Alfonso said he had not seen her for one year. The social worker learned at that

4

time that Jennifer had died of acute liver failure. At a second visit, Raquel again was quiet and did not go to Alfonso. Toward the end of the visit, she began to relax. When the visit ended, she eagerly got into the car and appeared happy to return to her foster home.

On October 18, 2013, Alfonso petitioned under section 388, asking that Raquel be placed with him, that she be placed with him with family maintenance services, or that he receive reunification services. As changed circumstances, he said he had been in contact with the Agency and named Raquel's presumed father, and Jennifer had died. He claimed he had had consistent contact with Raquel when she was in Jennifer's care, and they had renewed their relationship through visitation. He argued he could provide a safe home for Raquel, and it was in her best interests to grow up in her biological family.

On October 21, 2013, at the combined section 366.26 hearing and hearing on Alfonso's section 388 petition, the court granted the foster parents' application to be named Raquel's de facto parents. It summarily denied Alfonso's section 388 petition. The social worker testified Jennifer told her she had occasionally taken Raquel to Mexico to see Alfonso, and each time Raquel stayed for one to two days. She testified, Alfonso, on the other hand, had told her Raquel had lived with him until just before her first birthday. Alfonso testified Raquel lived with him until she was about eight or nine months old, he cared for her and they had a bond. He said after Jennifer took Raquel to the United States, it had been difficult for him because he could not cross the border, and he had seen her only one time until their visits at the Mexican Consulate. He testified he had learned of Raquel's dependency when Francisco brought him some letters. He said his second visit with Raquel had been better than the first and he believed that by the end of the second visit Raquel did not want to leave him.

5

After considering the testimony and documentary evidence, the court found by clear and convincing evidence that it would be detrimental to place Raquel with Alfonso. The court noted Alfonso's delay in becoming involved in the dependency case even though he knew about it shortly after Raquel was removed from Jennifer. It found Raquel was clearly adoptable and none of the statutory exceptions to adoption applied. It terminated parental rights and referred Raquel for adoption.

DISCUSSION

I

Alfonso contends the finding it would be detrimental to place Raquel with him is not supported by clear and convincing evidence. He argues even though a section 366.26 hearing had already been scheduled, the court was required to consider placement with him under section 361.2, which requires a finding by clear and convincing evidence.

Parents have a fundamental interest in the care and custody of their children. Thus, they have due process protections in juvenile dependency proceedings. (*Santosky v. Kramer* (1982) 455 U.S. 745, 758.) Before the state may terminate the parent's parental rights, "due process requires that the State support its allegations by at least clear and convincing evidence." (*Id.* at pp. 747-748; *In re Gladys L.* (2006) 141 Cal.App.4th 845, 848.) "California's dependency system comports with *Santosky's* requirements because, by the time parental rights are terminated at a section 366.26 hearing, the juvenile court *must* have made prior findings that the parent was unfit." (*In re Gladys L.,* at p. 848; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254.) Before terminating the parental rights of a presumed father, a court must

find by clear and convincing evidence that the child would face a risk of detriment in the parent's custody. (*In re Gladys L.,* at p. 848.)

It would not have been appropriate for the court to follow the procedures of section 361.2 at the section 366.26 hearing because section 361.2 governs a noncustodial parent's request for custody at the disposition stage of dependency proceedings. It is not applied at a section 366.26 hearing. The Agency made sufficient efforts to locate and provide notice to Alfonso. It searched for him, sent notice to him at his brother Francisco's address and Francisco hand delivered notice to Alfonso in Tijuana. Alfonso told the social worker he was aware Raquel had become a dependent child of the court two months after she was removed from Jennifer, but he made no effort to contact the Agency or locate Raquel. This record shows the Agency made sufficient efforts to locate Alfonso and he received adequate notice. The fact he did not come forward for several months did not require a return to the dispositional stage of the proceedings.

The court complied with applicable procedural and constitutional safeguards when finding that Raquel's placement with Alfonso would be detrimental to her. Alfonso was represented by counsel and provided testimony at the hearing. The court considered his criminal record, including his past conviction for burglary and arrests for driving under the influence, drug possession and possession of drug paraphernalia and battery on a spouse, as well as the substantiated claim of domestic violence and emotional abuse. He did not participate in the services offered at the time to address the violence he perpetrated in that case. The court referred to Alfonso's drug and child welfare history and his failure to come forward

7

and request visitation with Raquel when making its decision. Substantial evidence supports the finding she would face a substantial risk of detriment in Alfonso's custody.

Alfonso relies on *In re Z.K.* (2011) 201 Cal.App.4th 51for his argument that the court erred by making the detriment finding. This case is readily distinguishable. In *In re Z.K.,* the juvenile court terminated a noncustodial mother's parental rights without making a finding of detriment, and the reviewing court held there was not evidence in the record to support such a finding. (*Id.* at p. 63.) Here, by contrast, the court properly found by clear and convincing evidence Raquel would face a risk of detriment in Alfonso's care, and substantial evidence supports that finding. *In re Suhey G.* (2013) 221 Cal.App.4th 732, also is different. There, the child welfare agency agreed search efforts for the father had been inadequate and he had not received timely notice. (*Id.* at p. 744.) Here, the Agency made adequate search efforts for Alfonso, and he received actual notice of the dependency proceedings. Neither *In re Z.K.* nor *In re Suhey G.* supports his arguments.

The court complied with appropriate safeguards before making a finding of detriment. Substantial evidence supports the finding.

II

Alfonso contends the court violated his due process rights by summarily denying his section 388 petition without an evidentiary hearing. He argues his circumstances had changed in that he had become Raquel's presumed father and began participating in the proceedings, and Jennifer had died. He maintains he wants to become involved in Raquel's life and provide support for her, and it is in her best interests to maintain her family bonds.

Section 388 provides in part:

"(a)(1) Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. . . . [¶] . . . [¶]

"(d) If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . the court shall order that a hearing be held . . . ."

To obtain the relief sought in a section 388 petition, the petitioner must show both a change of circumstances or new evidence and that the change sought is in the child's best interests. (§ 388; Cal. Rules of Court, rule 5.570; *In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) A petition is liberally construed in favor of its sufficiency. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 461.) " ' "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." ' " (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432.) The petitioner bears the burden of proof, however, to make both showings. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The juvenile court has discretion to summarily deny a petition if the moving party has not met the threshold burden of proof. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

Alfonso has not shown the court abused its discretion by summarily denying his petition. The court did not err by finding he had not shown changed circumstances. He was aware of the juvenile court proceedings, but waited months before coming forward. As the court stated, "I don't think the [section] 388 [petition] is designed for a parent to sit back and do nothing and wait till the [section 366].26 hearing and then come forward a file a [section]

9

388 [petition] and say, 'The changed circumstances are I've changed my mind and I'm now ready to parent the child."

The court did not err by finding Alfonso had not made a prima facie showing of changed circumstances.

Alfonso also did not show the change he requested is in Raquel's best interests. His argument that maintaining a connection with her biological family is without basis. He offered no evidence that she would be harmed by the loss of biological family ties or that his relatives were available to offer support. It had been at least one year since he had seen Raquel and when they began having visits she kept a distance away from him. It is not clear whether she had spent much time with other biological relatives. The evidence showed, however, that she had strong bonds with her de facto parents, who had cared for her and fostered her well-being and development. Alfonso has not shown the court erred by denying his section 388 petition without a hearing.

## III

Alfonso maintains the court erred by finding the beneficial parent-child relationship exception of section 366.26, subdivision (c)(1)(B)(i) to termination of parental rights and adoption does not apply in this case. He argues he loved and cared for Raquel, raised her for half of her life and poses no threat to her.

Adoption is the permanent plan favored by the Legislature. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) If the court finds by clear and convincing evidence that a child is adoptable, it becomes the parent's burden to show that termination of parental rights would be detrimental to the child because a specified statutory exception exists. (*Id.* at p. 574.) Under

the exception found in section 366.26, subdivision (c)(1)(B)(i), the parent is required to show termination would be detrimental in that "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." In *In re Brandon C.* (1999) 71 Cal.App.4th 1530, 1534, the court noted "[c]ourts have required more than just 'frequent and loving contact' to establish the requisite benefit for [the] exception."

In reviewing whether there is sufficient evidence to support the trial court's finding, the appellate court reviews the evidence in the light most favorable to the trial court's order, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. (*In re Autumn H., supra*, 27 Cal.App.4th at p. 576.)

Substantial evidence supports the court's findings that Raquel is specifically and generally adoptable, and Alfonso did not sustain his burden to show the beneficial parent-child exception applied to prevent terminating his parental rights. Alfonso did not maintain regular visitation and contact with Raquel. He had not seen her for at least one year when they began visits at the Mexican Consulate. He also did not show his relationship with her was so beneficial that it outweighed the advantages she would gain from being adopted. Alfonso claimed he had cared for Raquel during the early months of her life, but it is unclear whether she actually lived with him or if Jennifer had merely taken her for one- or two-day visits. In any event, he had not occupied a parental role in Raquel's life for many months. Further, he did not show she had a substantial, positive emotional attachment to him. At their two visits, she was not comfortable and remained a distance away from him. At the end of the visits, she appeared more relaxed, but she showed no distress at leaving him and happily returned to her foster home. The court reasonably found the benefits of stability that Raquel would gain from

11

adoption outweighed any possible detriment from severing the parent-child relationship. Alfonso has not shown error by the court finding the beneficial relationship exception to termination of parental rights and adoption did not apply.

## DISPOSITION

The orders are affirmed.

HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.

12