Filed 8/12/16  In re R.F. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re R.F., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>R.F.,<br><br>        Defendant and Appellant. | A146996<br><br>(City and County of San Francisco Super. Ct. No. JW126300) |

Appellant R.F. appeals from a denial of a Welfare and Institutions Code section 778[1] petition to modify a previous disposition order placing him in juvenile hall. R.F.'s appointed appellate counsel submitted a brief in accordance with *People v. Wende* (1979) 25 Cal.3d 436.  Counsel informed appellant of his right to personally file a supplemental brief within 30 days, and appellant did not avail himself of that option. Finding no issues requiring briefing, we affirm.

---

[1] All subsequent unspecified statutory references are to the Welfare and Institutions Code.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying Petitions and Dispositions

Appellant R.F. was charged in three separate section 602 petitions with various offenses occurring between August and December 2012. Appellant was first declared a ward of the court in January 2013 after admitting to a misdemeanor count of making a criminal threat (Pen. Code, § 422) and two felony counts of firearm possession (Pen Code, §§ 25850, subd. (a), 25400, subd. (a)(2)) as charged in two of the section 602 petitions. After a contested disposition hearing on January 28, 2013, appellant was committed to the Log Cabin Ranch School (LCRS). While at LCRS, it was alleged that appellant and several others conspired to put urine and feces in another minor's water bottle. Based on this incident, appellant was expelled from the LCRS program and a probation violation petition (see § 777, subd. (a)) was filed. After appellant admitted the violation, his wardship was redeclared, and he was committed to Mary's Help, an out-of-home placement, in July of 2013.

Reports on appellant's progress at Mary's Help were generally positive. A December 2013 report described him as "cooperative and respectful" and noted that he had no incident reports and "all parties involved [were] very proud of [appellant]" in light of the positive changes in his behavior and attitude. The permanent plan for appellant at that time was for him to be able to return home in June 2014 after successful completion of the program. However, in February 2014, appellant ran away from the program after staff found him with contraband (a cell phone) and an arrest warrant issued. In June 2014, appellant was arrested after being spotted by the police at a strip mall in San Francisco. On July 1, 2014, the court reinstated appellant on probation and ordered him to be placed at Boy's Republic in Southern California. While at Boy's Republic, appellant completed high school and consequently graduated early from the program in November 2014, at which time he returned to live with his mother in San Francisco.

On March 10, 2015, appellant and three others were arrested on gun possession charges. Although no new charges were filed, a section 777 probation violation petition

was filed alleging that appellant appeared in photographs on social media "in which the minor was in possession of a firearm or something that looked like a firearm/weapon, could be used as a firearm/weapon, or could reasonably be considered to be a firearm/weapon." The trial court released appellant on home detention, with orders not to possess any weapons.

On April 12, 2015, appellant was assaulted by several people while shopping at a mall with his mother. Appellant suffered a broken collar bone, broken teeth, and other bruises and abrasions. During surgery to repair appellant's collar bone, a steel plate and screws were inserted into appellant's body. Appellant's surgeon informed him that he would require a second surgery to remove the plate and screws, as well as medical visits before and after the surgery and bed rest after surgery was completed.

On July 3, 2015, just prior to appellant's 18th birthday, San Francisco Police Department (SFPD) officers conducted a probation search of appellant's residence. While conducting a search of appellant himself, SFPD found a firearm in appellant's sweatshirt pocket. A new section 602 petition was filed on July 6, 2015, alleging six felony counts relating to the July 3rd gun possession. Appellant admitted count 2, carrying a concealed firearm on the person (§ 25400, subd. (a)(2)), and count 6, receiving a large capacity magazine (§ 32310, subd. (a)); the additional counts of the petition were dismissed, as was the section 777 probation violation petition filed in March 2015. A contested disposition hearing followed over the course of several days in August 2015.

The juvenile probation department's multidisciplinary case team recommended that appellant be committed to the San Francisco Juvenile Justice Center (juvenile hall) for a period of one year. According to the team, appellant was not eligible to be sent to the Department of Juvenile Justice, and he did not qualify for other out-of-home placements because he had already received his high school diploma. Any possible further placement at LCRS was rejected by the team because they felt appellant was "too criminally sophisticated" and therefore the program "would not be a good fit." LCRS also was not able to serve appellant's post-secondary educational needs. Appellant

3

argued that a lengthy juvenile hall placement was inconsistent with statutory authority, case law, and policy and rehabilitative goals of the juvenile justice system. He also noted that he would need additional surgery, bed rest, and medical follow-up to continue treatment of the broken collarbone appellant suffered in April 2015. For these reasons, appellant requested that the court release him on GPS monitoring and allow him to live with his aunt so he could attend college classes and continue with his medical care.

On August 19, 2015, the court rejected appellant's request to be allowed to live with his aunt and instead placed him on probation and committed him to juvenile hall for one year, finding it was in the best interests of appellant and the public "to enhance the Minor's reformation and rehabilitation."[2] In doing so, the court specifically "reject[ed] home on probation as a potential vehicle to rehabilitate" appellant. It noted it had "considered all options," including placement with a relative and other placements less restrictive than juvenile hall.

## B. Section 778 Petition Proceedings

On November 25, 2015, appellant's counsel filed a Notice of Motion and Motion to Modify Court Orders pursuant to section 778 (section 778 petition). The section 778 petition alleged several violations of Title 15 Minimum Standards for Juvenile Facilities, and argued that appellant had not been offered any rehabilitation services as required by section 202, subdivision (b). The petition also alleged that appellant's mental and physical health had deteriorated; appellant had lost a significant amount of weight and suffered from chronic pain, neither of which was being adequately addressed by juvenile hall staff or the juvenile probation department. The petition alleged that the probation department had failed to "provide [appellant] access to" his surgeon and primary care physician by failing to sign appellant up for medical insurance, refusing to schedule necessary follow-up medical appointments for appellant, being uncooperative with

---

[2] A separate appeal, *In re R.F.* (A146082, app. pending), challenges several aspects of this disposition. We address those challenges in a separate opinion, but we take judicial notice of the Reporter's Transcripts of August 5, 18 and 19 from appeal A146082 to ensure that our recitation of the facts is accurate and complete.

4

appellant's mother and counsel, and refusing to transport appellant to medical appointments with his chosen care providers. In essence, appellant's moving papers argued that appellant's continuing medical issues and the alleged refusal of the juvenile hall and probation staff to address those issues properly constituted a change in circumstances, and as a result, the placement in juvenile hall was no longer in appellant's best interest. To complicate matters, appellant had signed a Revocation of Medical Release shortly after turning 18, which apparently made it difficult or impossible for any medical staff associated with juvenile hall to treat appellant or prescribe medication for him. Additionally, the weight loss alleged in the filed papers was apparently in some part due to appellant's personal choice not to eat the food offered to him because he had "no appetite" and "does not like [the] food" at juvenile hall.

The section 778 petition requested that appellant be released from juvenile hall and placed with his aunt in order for him to be able to access appropriate medical care, thereby ceasing further medical and psychological harm to appellant. In the alternative, the petition requested that the court order the juvenile probation department to (1) obtain medical insurance for appellant through Covered California, and (2) schedule medical appointments for appellant to see his surgeon and primary care physician within the next seven days, and also to transport appellant to those appointments.

The opposition filed by the district attorney's office argued that appellant presented no change in circumstances or new evidence to warrant a modification of the order placing him in juvenile hall. It noted that the request to have appellant released from juvenile hall and placed with his aunt was the same as that requested at the disposition hearing in August, and the issues being raised were the same issues as those raised at the disposition hearing.

On December 3, 2015, the parties convened and the trial court considered the section 778 petition. The court noted that it had read and considered the written papers filed by appellant in support of his motion, and limited appellant's counsel to arguing anything new that was not included in the filed motion. Appellant's counsel argued that

5

juvenile hall regulations require that juvenile hall bring appellant to a physician of his choice, and that the "probation department's conduct in this matter borders on cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution." Counsel also briefly argued that the conduct was also in violation of "United Nations and European Union policy positions," the Fourteenth Amendment of the United States Constitution, and possibly the Americans with Disabilities Act (ADA).[3] The court received clarification that appellant, because he had revoked his medical authorization, had essentially refused any potential medical intervention or pain medication prescribed by anyone other than his chosen medical providers.

The court denied appellant's section 778 petition due to appellant's failure to establish any change in circumstances or new evidence warranting a modification of the juvenile hall placement. The court noted, in denying appellant's request to be placed with his aunt, that it was "the exact same motion raised during the contested disposition" in August. In addition, the section 778 petition, while making various claims about probation's "refusal" to facilitate appellant's medical care, was not supported by any sworn statements. The court responded to one claim made by appellant's attorney as follows: "Sir, I don't have to consider nonevidence, no proof . . . . You didn't file that in your papers. You didn't file it under penalty of perjury. You haven't brought me anything. So your just talking about it and spouting about it is not evidence I'm going to consider." The court also denied appellant's alternative request that appellant receive access to particular doctors within the next seven days, and also a request that appellant's attorney be kept apprised of all appellant's medical appointments and be allowed to attend them.

## II.  DISCUSSION AND DISPOSITION

In considering a petition to modify a previous court order under section 778, the

---

[3] Appellant's written section 778 petition only referenced section 778 and Title 15 Minimum Standards for Juvenile Facilities; appellant's trial counsel mentioned the Eighth and Fourteenth Amendments, the ADA, and international law for the first time at the hearing on the section 778 petition.

reviewing court should consider "circumstances existing when the order sought to be modified or terminated . . . in order to determine whether there has been a substantial change in the circumstances warranting a modification or termination." (*In re Corey* (1964) 230 Cal.App.2d 813, 831.) It is well established that "the modification . . . of an order previously made by a juvenile court rests within its discretion, and that its order granting or refusing an application for modification . . . may not be disturbed unless there has been an abuse of discretion." (*Id.* at p. 832; see *In re Stephanie M.* (1994) 7 Cal.4th 295.) The trial court did not abuse its discretion in denying appellant's request to modify his placement pursuant to section 778. In fact, the court was entitled to deny the section 778 petition ex parte without a hearing after finding the petition failed to state a change of circumstances or new evidence. (See Cal. Rules of Court, rule 5.570(d)(1).) We see no merit to any of the various constitutional, statutory and international law based arguments concerning conditions of confinement at juvenile hall raised in the trial court by appellant.

Finding no arguable issues that require briefing within the meaning of *People v. Wende*, *supra*, 25 Cal.3d 436, the court's denial of appellant's section 778 petition is affirmed.


_____
Streeter, J.


We concur:


_____
Ruvolo, P.J.


_____
Reardon, J.

7