Filed 9/8/23  In re M.C. CA4/3

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.C.., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>A.C.,<br><br>    Defendant and Appellant. | G062205<br><br>(Super. Ct. No. 21DP0066)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

It is hereby ordered that the opinion filed herein on August 11, 2023, is hereby MODIFIED as follows:

On page 7, in the last sentence of the first paragraph beginning with "In an unpublished opinion, in July 11, 2022, involving another child of Mother's," delete the phrase "involving another child of Mother's."

This modification does not change the judgment.  The petition for rehearing is DENIED.

DELANEY, J.

WE CONCUR:

GOETHALS, ACTING P. J.

MOTOIKE, J.

2

Filed 8/11/23  In re M.C. CA4/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>A.C.,<br><br>        Defendant and Appellant. | G062205<br><br>(Super. Ct. No. 21DP0066)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Robert Gerard, Judge.  Affirmed in part, conditionally reversed in part, and remanded.  Respondent's motion to take additional evidence.  DENIED.

        Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

        Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

\*      \*      \*

A.C. (Mother) appeals from the juvenile court's order terminating her parental rights and placing M.C. (child or minor) for adoption. Mother contends the order should be reversed because the court abused its discretion in denying her Welfare and Institutions Code section 388 petition to modify or change the court's order terminating reunification services.[1] As discussed below, we conclude Mother failed to show changed circumstances or the best interests of the child supported her petition. Mother also contends the order should be reversed because respondent Orange County Social Services Agency (SSA) failed to complete its initial inquiry of all available extended family members pursuant to section 224.2, subdivision (b) of the California Indian Child Welfare Act (ICWA). SSA concedes that the initial duty to inquiry involves inquiring of these maternal relatives, and that it failed to do so. Based on those concessions, we will conditionally reverse and remand for compliance with ICWA inquiry duties. Accordingly, we affirm the denial of Mother's section 388 petition, conditionally reverse the order terminating parental rights, and remand for further proceedings.[2]

## FACTS

A. *Dependency Petitions*

On January 16, 2021, senior social worker (SSW) Maria Uyesugi filed an application for a protective custody warrant pursuant to section 340 to temporarily remove M.C., who was born a few days earlier, from Mother and unknown father

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise stated.

[2] Given the importance and need for finality at this stage in the proceedings, we encourage the parties to stipulate to the immediate issuance of the remittitur in this case. (See Cal. Rules of Court, rule 8.272(c)(1).)

2

because the child's physical environment posed a threat to her safety or health. The application alleged that although Mother denied any current drug use, she did not agree to allow Uyesugi to obtain her medical records and was not forthcoming about her extensive drug and criminal history. Notably, Mother had a dependency case in Los Angeles County for the child's half sibling, who was removed from Mother's house after a criminal search of the home was completed by law enforcement "due to reported Mother's drug use, drug sales, and gang affiliation with White Supremacists being conducted from the home." The juvenile court granted the request the same day and the child was placed in a foster home.

On January 20, 2021, SSA filed a dependency petition, alleging Mother failed to protect the minor and abuse of sibling. At the detention hearing, the juvenile court found SSA made a prima facie showing the minor came within section 319. It granted Mother eight hours of supervised weekly visitation and ordered SSA to provide reunification services. It also noted that Mother denied any American Indian Heritage. Mother's counsel identified Andrew C. (father or Andrew C.), who was not present, as a possible father, so the court ordered ICWA and paternity findings deferred.

In the March 9, 2021 jurisdiction/disposition report, it was stated that Mother agreed to a case plan consisting of participation in therapy, parent education, drug testing, an outpatient substance abuse program, a 12-step program, and a parent mentorship program. The report noted that Mother regularly visited the child, and that the "prognosis for reunification is good."

At the jurisdictional hearing, the juvenile court found true the allegations in the petition by a preponderance of the evidence, determined the minor came within the provisions of section 300, and declared the minor a dependent child of the juvenile court under section 360. The court approved the case plan detailed in the March 9, 2021 report.

A June 9, 2021 interim review report noted that Mother reported receiving services from Sober Life Recovery aka Sober Life USA (Sober Life), including counseling, outpatient substance abuse program, substance abuse testing and a 12-step program. SSW Crystal Sanchez stated she called Sober Life on April 29, 2021, to check on Mother's case plan compliance, but had to leave a message. The following day, Victoria Moore from Sober Life contacted Sanchez and informed her that Mother was in their outpatient program, had a mental health counselor and an outpatient counselor, and was being drug tested. Sanchez called Sober Life on May 12 and 20 to request updates, but received no response. In the interim report, Sanchez recommended that all court orders should remain in full force and effect, and the court agreed in a June 9, 2021 minute order. The court set the six-month review hearing for September 9, 2021.

On September 9, 2021, SSA filed a Status Review Report in which it recommended terminating reunification services for Mother and setting a section 366.26 permanency hearing. SSW Sanchez explained that SSA concluded Mother was making minimal progress in her case plan, as "evidenced by no documentation being received regarding any of her services through Sober Life, the Mother not participating in her drug patch testing, and [Sanchez] being unable to confirm Mother's participation in Olive Crest's parenting education classes due to no release of information being on file."

SSA was particularly concerned that Mother's alleged service provider, Sober Life, was not legitimate based on Los Angeles County social worker Leanne Parada's June 2021 investigation of the provider in the dependency case involving Mother's other child. In a July 12, 2021 e-mail, Parada informed Sanchez that on June 24, 2021 she had visited the location of Sober Life listed on Mother's intake form, but found the office unlocked and seemingly "empty and abandoned." Parada spoke to people at an adjacent business and was informed that "they had been working at the office for more than 5 years and had not heard of Sober Life USA being located next door nor had they seen any patients going in or out of the suite." Parada then called

4

Sober Life and spoke with Ms. Monroe, who, while laughing, informed Parada that Sober Life had another location in Lake Forest but could not provide the address. Ms. Monroe named several persons who were providing services to Mother but would not provide Parada with their contact information. Parada performed a search on the company, and the search results showed that Sober Life had been charged with insurance fraud in 2018 and was shut down. In response to Parada's e-mail, on July 16, 2021, Sanchez called Sober Life and was informed by Tory Barr that "we just closed our doors for good." Sanchez requested all documentation relating to Mother, but, as of September 9, 2021, had received no response.

At the September 9, 2021 six-month review hearing, the court continued the matter to October 26, 2021 for a contested hearing because of the recommendations to terminate Mother's services and set a section 366.26 hearing. On October 5, 2021, Mother substituted the public defender with retained counsel Brian W. Baron.

In the October 26, 2021 Addendum Report #1, SSA continued to recommend termination of reunifications services, suitable placement for the minor, and scheduling a section 366.26 hearing. The report noted that although Mother had new service providers, SSA had not been successful in obtaining proof of participation, except for one counseling session. Additionally, SSA could not obtain any drug testing records because Mother had not signed a release of information.

At the October 26, 2021 contested six-month review hearing, the court continued the matter to November 29, 2021. It ordered Mother to provide proof of services to SSA and to sign all releases of information.

In the November 29, 2021 Addendum Report #2, SSA continued to recommend termination of reunification services. It reported that the counseling provider advised that Mother was participating in meetings but would be getting a new therapist. SSA still could not obtain any drug testing results. One provider did not respond to calls, and the other provider stated that "he had not heard of nor had any record of the Mother."

As for Mother's reported substance abuse program, on November 10, 2021, Mother contradicted her prior statements by reporting she never enrolled in that program. Finally, as to the 12-step program, SSA could not contact the provider and Mother never provided any proof of attendance.

At the November 29, 2021 contested six-month review hearing, the court found that reasonable services had been offered to Mother and her progress was minimal. It terminated reunifications services and scheduled a section 366.26 hearing for March 29, 2022. Over SSA's objections, the court authorized drug patch testing and funding for Mother's substance abuse program with Mariposa.

On March 15, 2022, SSA submitted a report in connection with the section 366.26 hearing. It recommended the court find the minor adoptable and terminate parental rights. That same day, Mother filed a petition to change the court's order terminating reunification services pursuant to section 388. In the petition, Mother stated that "[s]ince my reunification services were terminated I have completed parenting classes at Olive Crest, enrolled in the Mariposa program and I am expected to graduate on 4/12/2022. I am stable and sober. I have been testing at Express Urgent Care. I have a sponsor. I have been sober for 378 days. I have been visiting [M.C.] four days per week for 12 hours. I completed counseling on 02/03/2022. I participated in 12 NA [Narcotics Anonymous] meetings per week."

The court continued the hearing on Mother's section 388 petition for further investigation. In an April 27, 2022 Addendum Report, SSA stated that it contacted Mother's reported test provider, Xpress Urgent Care, to verify tests results. The provider informed SSA that Mother tested negative on April 5, 2022. Mother did not have any drug test for the other months.

On April 28, 2022, the court conducted the hearing on the section 388 petition. SSA opposed the petition on the basis that other than the single negative test, there was no evidence that Mother was sober. "Unfortunately, with no proof of sobriety,

6

even with the completion of the Mariposa [substance abuse] program, . . . there is [no] prima facie evidence to justify return [of the child] at this time." SSA also noted that the completion certificate for the Olive Crest parenting class was dated July 27, 2021, which was months before the court terminated services and thus would not support a prima facie case. Following the hearing, the court denied the petition, finding Mother had not made a prima facie case for relief. On May 3, 2022, Mother appealed the court's denial of her section 388 petition. In an unpublished opinion, in July 11, 2022, involving another child of Mother's (G061354, July 11, 2022) [nonpub. opn.], this court dismissed the appeal, finding "[n]o good cause has been shown that an arguable issue exists."

At the May 12, 2022 section 366.26 meeting, the court found Andrew C. to be the alleged father. It relieved Baron as attorney and reappointed the public defender to represent Mother. The matter was continued several times until December 6, 2022.

On December 6, 2022, Mother filed another section 388 petition to change the court's order terminating reunifications services and setting a permanent plan of adoption. In the petition, Mother submitted four exhibits showing: (1) her completion of Mariposa's 16-week Substance Abuse and Alcohol Programs in April 2022; (2) completion of Olive Crest's 12-hour Parenting Class in July 2021; (3) one negative drug test result from Xpress Urgent Care on April 5, 2022; and (4) dismissal of felony identity theft charges in Ventura County, entered on January 18, 2022. At the December 6, 2022 hearing on Mother's section 388 petition, she also submitted evidence of her participation in a 12-Step program in January and February 2021.

At the hearing, Mother testified about her participation in various services and how the programs helped her gain insight into her drug and parenting problems. Mother also testified that at the beginning of the dependency case, she was drug testing twice a week. Later, she was offered drug patch testing, but she had an allergic reaction to the patch and stopped patch testing. She claimed to have been sober for 378 days, since February 14, 2021.

7

Following arguments, the court denied Mother's section 388 petition. It explained that Mother failed to show substantial changed circumstances. After noting that Mother's services were terminated 13 months ago, the court noted Mother produced no documentary evidence regarding AA or NA meetings and only one drug test in April 2022. The court also found that it would not be in the best interest of the child to grant the section 388 petition because it would further delay the child's permanent placement.

The court then heard argument on the section 366.26 petition. Following argument and consideration of the SSA reports, the court terminated the parental rights of Mother and father, and ordered the child placed for adoption.

B. *ICWA Findings*

On January 16, 2021, Mother denied Native American Indian heritage to SSW Uyesugi. On the ICWA-010 form, a worker indicated that Mother gave no reason to believe M.C. is or may be an Indian child.

At the detention hearing, Mother denied Native American Indian heritage to the court. Because Mother's counsel stated that Andrew C. was a possible father and he was not present, the court deferred ICWA and paternity findings.

In February 2021, Mother reported she was born in Colorado in 1983, but moved to California in 2002. She was estranged from her parents, who divorced when she was nine years old. Mother had two siblings, a brother and a sister.

On April 28, 2022, the juvenile court addressed ICWA, noting that "our various courts of appeal in this state have made it clear that both social services agencies and the court all need to collectively do better jobs of making sure that they have made state and federally required statutory inquiries into ICWA." The court then asked Mother about her Native American Indian heritage, she denied any without further elaboration.

SSW Sanchez then testified that Mother reported the child had no Native American Indian heritage to her knowledge. Sanchez also testified that Mother provided no names of any relatives for Sanchez to interview about the applicability of ICWA.

8

Nevertheless, Sanchez was able to contact Mother's sister, who reported the family did not have any Native American Indian heritage. Sanchez also learned that the maternal grandmother was deceased.

In the October 17, 2022 Addendum Report, Sanchez reported "no additional relatives have come forward or been presented by the [M]other to [Sanchez] in order to inquire of ICWA." On December 6, 2022, Mother testified that she had been in contact with her sister, brother, and father to make amends as a part of her 12-step program.

As to Andrew C.'s Native American Indian heritage, Mother stated that he did not have any. The court, however, ordered Mother to provide his contact information to SSA for ICWA inquiry. Thereafter, SSW Sanchez attempted to contact him by phone without success. Sanchez drove to the physical address she was provided, but a resident informed her that no one by the alleged father's name lived in the home.

On December 12, 2022, the court found the ICWA did not apply but that SSA had an "affirmative and continuing duty of inquiry."

DISCUSSION

A. *Section 388 Petition*

Section 388, subdivision (a)(1) states in pertinent part: "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." The petitioning party bears the burden of showing that there is new evidence or changed circumstances and that the proposed modification would be in the best interests of the child. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317 (*In re Stephanie M*.).)

9

"Not every change in circumstance can justify modification of a prior order." (*In re S.R.* (2009) 173 Cal.App.4th 864, 870.) The change in circumstances supporting a section 388 petition must be material. (See *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [requiring a "substantial change of circumstances"]; *In re Mickel O.* (2011) 197 Cal.App.4th 586, 615 [requiring the change in circumstances to be "'significant'" in nature].) As to the best interests element, after the court has terminated reunification services and set the matter for a section 366.26 hearing, the focus of the case shifts from the parent's interest in the care, custody, and companionship of the child to the needs of the child for permanency and stability. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) A court entertaining a section 388 petition at this stage in the proceedings "must recognize this shift of focus in determining the ultimate question before it, that is, the best interest of the child." (*Ibid.*)

In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450-1451.) "Whether the juvenile court should modify a previously made order rests within its discretion, and its determination may not be disturbed unless there has been a clear abuse of discretion." (*In re J.C.* (2014) 226 Cal.App.4th 503, 525.) "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

Mother contends the juvenile court abused its discretion in denying her second section 388 petition after the December 2022 hearing. We disagree. Mother has not shown there was a substantial change of circumstances since the court terminated her services in November 2021. As detailed above, her petition was based on: (1) her participation in a 12-Step program in January and February 2021; (2) completion of a parenting class in July 2021; (3) dismissal of felony identity theft charges in January

10

2022; (4) one negative drug test on April 5, 2022; (5) completion of a substance abuse program in April 2022; and (6) her testimony that she has been sober for over one year. The 12-step program and parenting class cannot show changed circumstances because they occurred well before termination of services. The dismissal of felony identity theft charges is not relevant to her drug problem, which was the underlying issue leading to the removal of the minor. As for the remaining three facts, they are insufficient to show a substantial change in Mother's drug problems. The court did not credit Mother's testimony that she was sober for over a year because there was no proof, other than the one negative test in April 2022. The completion of the drug substance class also did not provide sufficient evidence that Mother had made significant progress in addressing her drug problem. Additionally, Mother has not shown it would be in the best interest of the child to resume reunification services. The petition was brought 13 months after termination of services. Granting the petition would delay the child's permanent placement, and thus be contrary to the child's need for permanency and stability.

Mother's reliance on *In re J.M.* (2020) 50 Cal.App.5th 833, is misplaced. There, the child was removed because of domestic violence. (*Id.* at p. 836.) When the Mother filed her section 388 petition, she was in approved housing, no longer had contact with the father, and had been drug testing and receiving negative results. (*Id.* at pp. 842–843.) The child's counsel "argued strongly in favor of returning" the child to the Mother's care. (*Id.* at p. 843) In contrast, here, Mother was not compliant with her drug testing and the child's counsel advocated for termination of parental rights. In sum, the court did not abuse its discretion by denying Mother's section 388 petition. Mother failed to show materially changed circumstances or that the requested change would promote the child's best interests.

B. *ICWA*

Mother contends SSA failed to complete the initial inquiry set forth in section 2242.2, subdivision (b), when it failed to ask her father and brother about ICWA.

11

She requests this court conditionally reverse the court's order and remand for compliance with ICWA, noting that the inquiry of the maternal grandfather and uncle "could be done by [SSA] simultaneously with the occurrence of this appeal such that the findings could be addressed without further delay." SSA concedes that the initial duty of inquiry involves inquiring of extended family members as to possible Indian heritage (see § 224.2; Cal. Rules of Court, rule 5.481(a)), and that it did not contact the maternal grandfather and uncle.[3]

This court has adopted a "clear rule of reversal" in all cases where ICWA inquiry rules were not followed. (See *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *In re A.R.* (2022) 77 Cal.App.5th 197, 207.) Based on SSA's concessions, we conclude SSA failed to comply with ICWA. Following our prior precedents, the judgment terminating parental rights must be conditionally reversed and the matter remanded for compliance with ICWA. (See *In re E.V.*, *supra*, 80 Cal.App.5th at p. 701; *In re A.R.*, *supra*, 77 Cal.App.5th p. 208.) SSA argues we should conditionally affirm the judgment because "[w]ith a conditional affirmance, upon remand, the juvenile court can efficiently renew the ICWA finding, minimally frustrating the dependency proceeding." However, as we previously observed when conditionally reversing, "SSA can likely complete its ICWA obligation before the briefing on appeal is complete, resulting in very little delay when the matter is remanded to the juvenile court." (*In re E.V.*, *supra*, 80 Cal.App.5th at p. 700.) Thus, we are not persuaded that a conditional affirmance would result in any significant reduction in the impact on dependency matters as opposed to a conditional reversal, and thus decline to deviate from precedent here.

---

[3]     We deny SSA's request to take additional evidence of postjudgment ICWA inquiry of the maternal grandfather and uncle pursuant to Code of Civil Procedure section 909. (See *In re E.V.* (2022) 80 Cal.App.5th 691, 700 [denying motion to take additional evidence showing SSA belatedly fulfilling its ICWA obligation].)

DISPOSITION

The juvenile court's order denying Mother's section 388 petition is affirmed.  The order terminating parental rights over M.C. is conditionally reversed and remanded to the juvenile court for the limited purpose of allowing SSA to comply with the ICWA.  After complying with applicable inquiry and notice requirements, if it is determined that ICWA does not apply, the court's judgment shall be reinstated.


DELANEY, J.

WE CONCUR:


GOETHALS, ACTING P. J.


MOTOIKE, J.